UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BILLY BOUIE**

v.

**JDV FREIGHT TRANSPORT, LLC,
ET AL.**

**CIVIL ACTION**

**NO. 20-211-JWD-EWD**

### RULING AND ORDER

This matter comes before the Court on the *Rule 12(b)(6) Motion to Dismiss Complaint Filed Against OOIDA Risk Retention Group, Inc.*, (Doc. 16), filed by Defendant OOIDA Risk Retention Group, Inc. ("OOIDA"). Plaintiff Billy Bouie ("Plaintiff" or "Bouie") opposes the motion. (Doc. 21.) No reply was filed. Oral argument is not necessary. The Court has carefully considered the law, facts in the operative complaint, and arguments and submissions of the parties and is prepared to rule. For the following reasons, OOIDA's motion is denied.

**I.    Relevant Factual Background**

The present litigation arises out of a motor vehicle accident that allegedly occurred on April 30, 2019. (*Complaint* ("*Compl.*") ¶ VI, Doc. 1.) Bouie alleges that a 2007 Peterbilt tractor owned by defendant JDV Freight Transport, LLC ("JDV") and driven by defendant Oscar Carballo ("Carballo") crashed into the rear of Plaintiff's tractor/trailer. (*Id.*) Plaintiff further claims that as a result of the crash, he suffered "severe and disabling injuries," (*id.*), including "possible ruptured and/or herniated discs and/or nerve damage in his spine, as well as other injuries to the bones, muscles, joints, tendons and other parts of his body," (*id.* ¶ VIII.) Additionally, as a result of the crash, Plaintiff asserts that he "has in the past and will in the future: require medicines, medical care, medical treatment, have to expend moneys and incur obligations for treatment and care, suffer

agonizing aches, pains, and mental anguish, and be disabled from performing his usual duties, occupations and avocations." (*Id.*)

Defendant OOIDA is a foreign risk retention group ("RRG" or "FRRG") incorporated under the laws of Vermont, with its principle place of business there as well. (*Id.* ¶ II.) OOIDA issued an insurance policy to JDV that was allegedly in force at the time of the accident. (*Id.* ¶ V.) Plaintiff made OOIDA a party defendant under the Louisiana Direct Action Statute ("LDAS"), La. Rev. Stat. Ann. § 22:1269. (*Compl.* ¶ II, Doc. 1.)

II.     **Rule 12(b)(6) Standard**

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

2

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III. Discussion

#### A. Parties' Arguments

##### 1. OODIA's Original Memorandum (Doc. 16-1)

OOIDA argues that although Plaintiff may have a right of direct action against it under the LDAS, La. Rev. Stat. Ann. § 22:1269, the Liability Risk Retention Amendments of 1986 ("LRRA"), specifically 15 U.S.C. § 3902, preempts the application of the LDAS in this case. (Doc. 16-1 at 3.) Because of this preemption, OOIDA contends that Plaintiff has no right of direct action

3

against it, and thus, Plaintiff's claim against OOIDA should be dismissed. (*Id.* at 6.) In support, OOIDA relies on two cases: *Courville v. Allied Pros Ins. Co.*, 13-0976 (La. App. 1st Cir. 6/5/15); 174 So. 3d 659, *writ denied,* 15-1309 (La. 10/30/15); 179 So. 3d 615 and *Wadsworth v. Allied Pros. Ins. Co.*, 748 F.3d 100 (2d Cir. 2014). (*See* Doc. 16-1 at 3-6.) OOIDA contends that *Wadsworth* held that the New York Direct Action Statute was preempted by the LRRA. (*Id.* at 4. (citing *Wadsworth*, 748 F.3d at 102-03).) OOIDA further urges that the Louisiana First Circuit Court of Appeal in *Courville* held that the "[Louisiana Direct Action Statute] is inapplicable to risk retention groups chartered in another state." (*Id.* at 5–6.)

### 2. Plaintiff's Opposition (Doc. 21)

Bouie responds "that OOIDA is either incorrect, or it has not established [that it is not subject to the LDAS] beyond dispute via the present motion to dismiss." (Doc. 21 at 3.) Plaintiff contends that although the two cases cited by OOIDA found that state direct action statutes violated the LRRA, several other courts, including this Court, have held the contrary. (*Id.*) In support of this, Plaintiff points to a Louisiana Fourth Circuit case: *Zeigler v. Hous. Auth. of New Orleans*, 15-0626 (La. App. 4th Cir. 3/23/16); 192 So. 3d 175. *Zeigler* itself cites to a Missouri state court case, *Sturgeon v. Allied Pros. Ins. Co.*, 344 S.W.3d 205 (Mo. App. 2011), and a Kentucky federal court case, *Nat'l Home Ins. Co. v. King*, 291 F. Supp. 2d 518 (E.D. Ky. 2003). (Doc. 21 at 3-4.) Moreover, Plaintiff notes that this Court has previously declined to apply the LRRA exemptions to the application of the LDAS in *Collins v. AAA Rent All, Inc.*, 812 F. Supp. 642, 644 (M.D. La. 1993) (holding that "[a]lthough 15 U.S.C. § 3901, *et seq.* exempts risk retention groups from certain state regulations, it does not expressly or impliedly preempt La. Revised Statute 22:655 [now La. R.S. 22:1269] which permits a plaintiff to directly sue the insurer of the defendant."). (Doc 21 at 6.) Plaintiff also points the Court to the language of the LRRA, specifically 15 U.S.C.

4

§ 3901(b), which provides in part, "[n]othing in this chapter shall be construed to affect either the tort law or the law governing the interpretation of insurance contracts of any State." (Doc. 21 at 4 (quoting *Sturgeon*, 344 S.W.3d at 216).) Based on this language, Plaintiff urges that "OOIDA's Motion to Dismiss has failed to demonstrate that it is not subject to such laws," (*id.* at 6), and that its "Motion to Dismiss should be denied," (*id.* at 7.)

### B. Analysis

Having carefully considered the matter, the Court finds that the plain language of the LRRA supports a finding that the LDAS is not preempted. Moreover, the Court also finds that the cases cited by Defendant are unpersuasive. The Court instead chooses to adopt the reasoning of its prior precedent in *Collins* and that of *Zeigler*, *Nat'l Home*, and *Sturgeon*.

### 1. Background

The present ruling warrants a discussion of the underlying statutes at issue here: the LDAS, La. Rev. Stat. Ann. § 22:1269, and the LRRA, 15 U.S.C. § 3901, *et seq.*

#### a. The Louisiana Direct Action Statute

Plaintiff seeks to make OOIDA a party to this litigation pursuant to the LDAS, La. Rev. Stat. Ann. § 22:1269, which provides in pertinent part:

> B. (1) The injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido . . .
>
> . . .
>
> (2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana.

The LDAS "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Zeigler*, 192 So. 3d at 179 (quoting *Green v. Auto Club Grp. Ins. Co.*, 08–2868, p. 3 (La.10/28/09); 24 So. 3d 182, 184). "Thus, the Direct Action Statute has the effect of allowing injured parties to sue insurance companies of the party allegedly at fault directly." *Id.*

### b. The Liability Risk Retention Amendments of 1986

Due to extremely high premiums and coverage gaps, Congress enacted the Product Liability Risk Retention Act of 1981, which allowed "persons or businesses with similar or related liability exposure to form 'risk retention groups' for the purpose of self-insuring." *Wadsworth v. Allied Pros. Ins. Co.*, 748 F.3d 100, 102–03 (2d Cir. 2014) (citing 15 U.S.C. § 3901(a)(4)). However, this only applied to product liability and completed operations insurance. *Id.* at 103. In 1986, "following additional disturbances in the interstate insurance markets" Congress passed the LRRA, extending the 1981 PLRRA to commercial liability insurance as a whole. *Id.* (citing 15 U.S.C. §§ 3901–3906 (1982 & Supp. IV 1986) and *Preferred Physicians Mut. Risk Retention Grp. v. Pataki*, 85 F.3d 913, 914 (2d Cir. 1996)). The statutory scheme of the LRRA "secures the authority of the domiciliary, or chartering, state to 'regulate the formation and operation' of risk retention groups." *Id.* (quoting 15 U.S.C. § 3902(a)(1)). "[T]he Act prohibits states from enacting regulations of any kind that discriminate against risk retention groups or their members, but does not exempt risk retention groups from laws that are generally applicable to persons or corporations." *Id.* (citing 15 U.S.C. § 3902(a)(4)).

6

### 2. Preemption and the LRRA Generally[1]

Preemption is derived from the Supremacy Clause of the Constitution. *Brackeen v. Haaland*, 994 F.3d 249, 298 (5th Cir. 2021). The Supremacy Clause provides in part that "the Laws of the United States which shall be made in Pursuance thereof[] . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Therefore, when 'Congress enacts a law that imposes restrictions or confers rights on private actors' and a 'state law confers rights or imposes restrictions that conflict with the federal law,' under the Supremacy Clause, 'the federal law takes precedence and the state law is preempted.' " *Brackeen*, 994 F.3d at 298 (quoting *Murphy v. NCAA*, ⎯ U.S. ⎯, 138 S. Ct. 1461, 1480 (2018)).

The Fifth Circuit has yet to weigh in on whether the LRRA preempts the LDAS or other similar state laws. However, other courts have provided some guidance. The Ninth Circuit has recently stated that:

> "When considering whether the LRRA preempts a state law, [the Court must] first determine whether the challenged aspect of the state law offends the LRRA's broad preemption language. If so, [the Court] consider[s] whether one of the LRRA's exceptions, which are contained in §§ 3902(a)(1) and 3905, applies to save the state law. If no exception applies, the law is preempted." *Attorneys Liab. Prot. Soc'y, Inc.* [*v. Ingaldson Fitzgerald, P.C.*], 838 F.3d [976,] 980 [(9th Cir. 2016)] (citations omitted).

*Allied Pros. Ins. Co. v. Anglesey*, 952 F.3d 1131, 1134–35 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 866 (2020). The Supreme Court has also stated that when "Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers

---

[1] Neither party provides the Court with a broad preemption analysis in their Memorandums; nevertheless, an examination of background preemption principles is warranted here.

7

of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks and alterations omitted). "Further, state laws enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise." *Wadsworth*, 748 F.3d at 105 (quoting *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 507 (1993) (internal quotation marks omitted)).

### 3. Language of the LRRA

The LRRA exempts risk retention groups from state laws that "make unlawful, or regulate, directly or indirectly, the operation of a risk retention group[.]" 15 U.S.C. § 3902 (a)(1). As the *Sturgeon* court noted, "operation" is the key term of this provision. *Sturgeon*, 344 S.W.3d at 215. Here, the ordinary meaning rule governs the Court's interpretation of "operation." *See Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (Sotomayor, J.) ("As in any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.' ") (quoting *BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006)). Here, nothing indicates anything other than the ordinary meaning of the word should be used.

Operation generally means "the quality or state of being functional or operative." *Operation*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/operation. (last visited Jun. 16, 2021).[2] Functional means "performing or able to perform a regular function." *Functional*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/functional. (last visited Jun. 21, 2021). Function means, *inter alia*, "the action for which a person or thing is specially fitted or used or for

---

[2] The words defined in this paragraph have multiple definitions; however, these are the most applicable ones given the context.

8

which a thing exists: purpose." *Function*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/function. (last visited Jun. 22, 2021). Operative means "producing an appropriate effect." *Operative*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/operative. (last visited Jun. 21, 2021).

Considering the above statutory text and meanings, the Court finds that the LRRA does not preempt the LDAS. Nothing in the LDAS prevents OOIDA from "being functional or operative" as a risk retention group. *See Zeigler*, 192 So. 3d at 179 ("Louisiana's Direct Action Statute does not directly or indirectly regulate *the operations* of [the defendant risk retention group].") Again, the LDAS merely "has the effect of allowing injured parties to sue insurance companies of the party allegedly at fault directly." *Id.* Further, the word "operation" in the LRRA "means that a state may not pass laws that keep risk retention groups from operating as insurance companies; however, the LRRA preserves the state's traditional role in the regulation of insurance." *Sturgeon*, 344 S.W.3d at 215 (citing *Mears Trans. Group v. State*, 34 F.3d 1013, 1017 (11th Cir. 1994)). Direct action statutes certainly fall within this category. *See, infra,* at 12. Thus, the plain and unambiguous language of the LRRA supports a finding that the LDAS is not preempted by the LRRA.

Other statutory language in the LRRA also supports this conclusion and contradicts OOIDA's position. Specifically, the definitions section provides:

> ***Nothing in this chapter shall be construed to affect either the tort law*** or the law governing the interpretation of insurance contracts of any State, and the definitions of liability, personal risk liability, and insurance under any State law shall not be applied for the purposes of this chapter, including recognition or qualification of risk retention groups or purchasing groups.

15 U.S.C. § 3901(b) (emphasis added). The LDAS undoubtedly falls within "the tort law . . . of any state." *See Zeigler*, 192 So. 3d at 179 (stating that LDAS "has the effect of allowing *injured* parties to sue insurance companies of the party allegedly at *fault* directly." (emphasis added)).

9

Indeed, a leading Louisiana tort law treatise dedicates an entire section to the statute. *See* 12 William E. Crawford, *Louisiana Civil Law Treatise Tort Law*, § 21:3 (2d ed. 2020); *see also* Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law*, § 12.05 (2020) (also discussing LDAS); Thus, under the plain and unambiguous language of the two statutes, the LDAS is not preempted by the LRRA.

### 4. Caselaw

OOIDA relies on *Wadsworth*, 748 F.3d 100 and *Courville*, 174 So. 3d 659. *Courville* relies heavily on *Wadsworth*. The Court finds the Second Circuit's reasoning in *Wadsworth* unpersuasive and declines to follow it.

Rather, the Court agrees with the *Zeigler* court that the *Wadsworth* interpretation is "expansive and overly broad." *Zeigler*, 192 So. 3d at 179. The *Wadsworth* court reasoned that its "expansive reading" of the LRRA preemption language "furthers the Act's purpose." *Wadsworth*, 748 F.3d at 107 (citing *Preferred Physicians Mut. Risk Retention Grp. v. Pataki*, 85 F.3d 913, 915 (2d Cir. 1996)). The court derives the purpose of the LRRA from prior Second Circuit precedent and the legislative history of the LRRA. *See id.*

However, the Court finds this exercise unnecessary. While reliance on legislative history is certainly a valuable method of statutory interpretation, *see Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 610 n.4 (1991) (noting the benefits of using legislative history), such a method should only be employed when there is an ambiguity in the statute. *See Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) (Kagan, J.) (explaining that the Court will not allow "legislative history to muddy clear statutory language.") As discussed previously, the language of the statute is clear and unambiguous; thus, there is no need to consult legislative history. Thus, because the Second Circuit's reliance on the legislative history of the LRRA is unwarranted given the clarity of the

statute, and because its interpretation of the LRRA is excessively broad, the Court declines to adopt its reasoning.

The Court instead chooses to adopt the reasoning set forth by its own precedent in *Collins*, 812 F. Supp. 642, and that of the Louisiana Fourth Circuit Court of Appeal in *Zeigler*, 192 So. 3d 175. The Court finds these cases to be more persuasive because they are more consistent with the plain language of the statute.

The facts of *Collins* are strikingly similar to the facts of the present case. In *Collins*, the plaintiff sued the defendant and his employer seeking damages resulting from an automobile accident that allegedly occurred while the defendant was within the course and scope of his employment. *Collins*, 812 F. Supp at 643. Pursuant to the LDAS, the plaintiff also sued the defendants' insurer, a risk retention group. *Id.* After removal to federal court, the plaintiff filed a motion to remand back to state court. *Id.* The court granted the plaintiff's motion to remand, finding that there was no federal question jurisdiction. *Id.* at 644. The court explained that "[a]lthough 15 U.S.C. § 3901, *et seq.* exempts risk retention groups from certain state regulations, it does not expressly or impliedly preempt La. Revised Statute 22:655 [revised La. Rev. Stat. Ann. § 22:1269] which permits a plaintiff to directly sue the insurer of the defendant." *Id.*

Similarly, in *Zeigler*, the Louisiana Fourth Circuit Court of Appeal found that "Louisiana's Direct Action Statute does not directly or indirectly regulate *the operations* of [the defendant risk retention group]." *Zeigler*, 192 So. 3d at 179. The court followed the reasoning set forth in *Sturgeon*, 344 S.W.3d 205 and *Nat'l Home Ins. Co*, 291 F. Supp. 2d 518.

Although *Sturgeon* and *Nat'l Home Ins. Co.* both involved state statutes banning arbitration clauses in insurance contracts and not state direct action statutes, they are still persuasive here.  For example, in *Nat'l Home Ins. Co.*, the Eastern District of Kentucky stated:

11

> When Congress expanded this Act in 1986 to cover all types of liability insurance, "it included provisions to preserve the states' traditional role in regulating insurance and protecting the public." In doing so, Congress sought to "augment[ ] the authority of non-chartering States to regulate solvency, trade practices and other matters" and it "contemplated that States may enact statutes and issue regulations to protect the public to the extent such action is not exempt by th[e] Act."

*Nat'l Home*, 291 F. Supp. 2d at 530–31 (citations omitted); *see also Sturgeon*, 344 S.W.3d at 215 ("[H]owever, the LRRA preserves the state's traditional role in the regulation of insurance.") (citing *Mears Trans. Group*, 34 F.3d 1013 at 1017). Furthermore, the application of the state statute "d[id] not offend the non-discrimination principle underlying the LRRA." *Nat'l Home Ins. Co.*, 291 F. Supp. at 531.

Similarly, here, the LRRA preserves Louisiana's "traditional role in protecting the public." In doing so, the LRRA allows the State to provide plaintiffs a direct right of action against a risk retention group.

In sum, the Court disagrees with the reasoning set forth by the Second Circuit in *Wadsworth* and followed by the Louisiana First Circuit in *Courville*. Instead, the Court will adopt the more persuasive reasoning of *Collins*, *Zeigler*, *Sturgeon*, and *Nat'l Home*, as these cases are more consistent with the plain and unambiguous language of the LRRA. Consequently, OOIDA's motion to dismiss will be denied.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(6) Motion to Dismiss Complaint Filed Against OOIDA Risk Retention Group, Inc.* (Doc. 16) filed by Defendant OOIDA Risk Retention Group, Inc is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>August 24, 2021</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**